1

2

3

4

5

6

7                       **UNITED STATES DISTRICT COURT**

8                       **CENTRAL DISTRICT OF CALIFORNIA**

9

10   KEVIN JOHNSON,                    )    NO. CV 04-6583  (Mc)
                                       )
11              Plaintiff,             )
                                       )    MEMORANDUM OF DECISION
12         v.                          )    AND ORDER IN A SOCIAL
                                       )    SECURITY CASE
13   JO ANNE B. BARNHART,              )
     Commissioner of the              )
14   Social Security Administration,   )
                                       )
15              Defendant.             )
     _____)
16

17        The plaintiff, KEVIN JOHNSON, filed the present action for review

18   of a final determination of the Commissioner of Social Security (the

19   "Commissioner") that the plaintiff is not disabled and not entitled to

20   Supplemental Security Income ("SSI") disability benefits.  For the

21   reasons set forth below, the court finds that the decision of the

22   Commissioner is supported by substantial evidence.  The matter is,

23   therefore, affirmed.

24                            **BACKGROUND**

25        The plaintiff filed an application for SSI disability benefits

26   under the Social Security Act (the "Act") on September 16, 2002.[1]

27   _____

28        [1]Previous applications had been filed and denied by
     administrative law judges in 1996 [AR 77] and again, upon remand, in
     1999 [AR 74-81]. The plaintiff did not appear for his hearing on
     remand. [AR 74-75.]  Another hearing request based upon an application

1  [Administrative Record ("AR") 236-38.]  The Commissioner denied the

2  application [AR 219-22], and the plaintiff filed his Request for

3  Hearing [AR 223-24].  An administrative hearing was held before

4  Administrative Law Judge Earl J. Waits (the "ALJ") on August 11, 2003.

5  [AR 49-70.]  On October 17, 2003, the ALJ filed a decision concluding

6  that the plaintiff was not under a disability as defined in the Act at

7  any time through the date of the decision. [AR 40-46.]  The Appeals

8  Council denied the plaintiff's request for review of the ALJ's

9  decision. [AR 6-7.]  The decision of the ALJ stands as the final

10 decision of the Commissioner.

11     Thereafter, the plaintiff filed the present action.  The

12 plaintiff and the Commissioner have consented to proceed before a

13 United States Magistrate Judge.  The parties have entered into a Joint

14 Stipulation setting forth their arguments.

15                      **STANDARDS OF REVIEW**

16     The court must sustain the findings of the Commissioner unless:

17 (a) they are not supported by substantial evidence in the record as a

18 whole; or (b) the Commissioner applied an improper legal standard.

19 See 42 U.S.C. 405(g); Gordon v. Secretary of Health and Human

20 Services, 803 F.2d 1071, 1072 (9th Cir. 1986).  Substantial evidence

21 means "more than a mere scintilla" but less than a preponderance.

22 Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28

23 L.Ed.2d 842 (1971); Desrosiers v. Secretary of Health and Human

24 Services, 846 F.2d 573, 576 (9th Cir. 1988).  "Substantial evidence"

25 \\\

26 \\\

27 _____

28 filed on May 19, 2000, was dismissed on September 19, 2001. [AR 119-
   21; AR 214-16.]

1  is evidence a "reasonable mind might accept as adequate to support a
2  conclusion."  Richardson v. Perales, 402 U.S. at 402; Gordon v.
3  Secretary of Health and Human Services, 803 F.2d at 1072.

4      This court must review the record as a whole and consider adverse
5  as well as supporting evidence.  See Green v. Heckler, 803 F.2d 528,
6  529-30 (9th Cir. 1986).  Where evidence is susceptible of more than
7  one rational interpretation, the court must sustain the Commissioner's
8  decision.  See Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir.
9  1984).

10                **THE FIVE-STEP SEQUENTIAL EVALUATION**

11     The Commissioner has established a five-step sequential
12  evaluation for determining whether a person is disabled.  First, the
13  Commissioner determines whether the person is engaged in "substantial
14  gainful activity."  If so, the Commissioner denies disability
15  benefits.  Second, if the person is not so engaged, the Commissioner
16  determines whether the person has a medically severe impairment or
17  combination of impairments.  If the person does not have a severe
18  impairment or combination of impairments, the Commissioner denies
19  benefits.  Third, if the person has a severe impairment, the
20  Commissioner determines whether the impairment meets or equals one of
21  a number of "listed impairments."  If the impairment meets or equals a
22  "listed impairment," the Commissioner conclusively presumes that the
23  person is disabled.  Fourth, if the impairment does not meet or equal
24  the "listed impairments," the Commissioner determines whether the
25  impairment prevents the person from performing past relevant work.  If
26  the person can perform past relevant work, the Commissioner denies
27  benefits.  Fifth, if the person cannot perform past relevant work, the
28  burden shifts to the Commissioner to show that the person is able to

perform other kinds of work.  The person is entitled to disability

benefits only if he or she is unable to perform other work.  See 20

C.F.R. § 404.1520 and 20 C.F.R. § 416.920; Bowen v. Yuckert, 482 U.S.

137, 140-42, 107 S.Ct. 2287, 96 L.Ed 119 (1987).

## FINDINGS OF THE ALJ

The plaintiff was born September 25, 1964. [AR 236.]  The

plaintiff has a high school education [AR 41, 252] and no past

relevant work [AR 41, 247].  The plaintiff alleges that he has been

unable to work since September 20, 2001, because of residuals of

gunshot wounds to his [right] leg and arm.  The plaintiff also alleges

a mental disorder.  [AR 246.]

The ALJ found that the plaintiff had not engaged in substantial

gainful activity since the alleged onset of disability.  The ALJ found

that the plaintiff had a depressive disorder not otherwise specified

and was status post gunshot wound to the femur.  However, the

plaintiff did not have an impairment or combination of impairments

listed in, or medically equal to one listed in, Appendix 1, Subpart P,

Regulations No. 4. [AR 45.] The ALJ found that the plaintiff's

allegations regarding his limitations were not credible and that the

plaintiff retained the residual functional capacity to perform light

work activity.  More specifically, the ALJ found that the plaintiff

could lift and carry twenty pounds occasionally and ten pounds

frequently.  He could sit, stand and walk for six hours out of an

eight-hour day.  The plaintiff should avoid working in teams or in

close proximity to peers.  The plaintiff should also avoid work

involving more than minimal contact with the general public. The ALJ

found that the plaintiff had no past relevant work.  However,

considering the plaintiff's age, his education and his residual

functional capacity, there were a significant number of jobs existing in the national and local economies which the plaintiff could perform. Accordingly, the ALJ concluded that the plaintiff was not disabled as defined in the Act at any time through the date of the decision. [AR 45.]

### THE PLAINTIFF'S CONTENTIONS

The plaintiff contends that the ALJ failed to provide a complete hypothetical question to the vocational expert and that the ALJ failed to consider the plaintiff's obesity.

### DISCUSSION

**The hypothetical question to the vocational expert**

_____"In order for the testimony of a VE to be considered reliable, the hypothetical posed must include 'all of the claimant's functional limitations, both physical and mental' supported by the record." Thomas v. Barnhart, 278 F.3d 947, 956 (9th Cir. 2002) quoting Flores v. Shalala, 49 F.3d 562, 570-71 (9th Cir. 1995).  The plaintiff contends that the ALJ's hypothetical question to the vocational expert failed to include all of his limitations because it failed to include the plaintiff's need for a cane.

As support for his contention that he requires a cane to balance while standing and walking, the plaintiff relies upon the opinions of the treating, examining, and non-examining physicians, whose opinions, according to the plaintiff, were improperly rejected by the ALJ. However, the opinion of the non-examining physician, such as that of the State agency physician, with nothing more, cannot constitute substantial evidence.  Andrews v. Shalala, 53 F.3d 1035, 1042 (9th Cir. 1995).  It must be supported by other evidence and be consistent with it.  Id., at 1041. The non-examining physician's opinion relied

1  upon, as does the plaintiff, the opinion of Dr. Tarek Bittar, the
2  consultative examiner who saw the plaintiff in connection with his
3  prior application on July 8, 2000. [AR 199.]  Dr. Bittar indicated
4  that the plaintiff, at that time, wore a full brace on his right lower
5  extremity and was able to ambulate and perform most of his daily
6  activities "with the use of a brace and the use of a cane as an
7  assistive device which is medically justified." Dr. Bittar diagnosed
8  "[r]ight foot drop, secondary to old gunshot wound injury." [AR 181,
9  184.] There are no indications in Dr. Bittar's report of any left
10 lower extremity complaints or findings.

11     Dr. Bittar's report was not written in connection with the
12 plaintiff's current application but in connection with the plaintiff's
13 prior application, and there is no issue of reopening asserted by the
14 plaintiff.  Although this fact alone may not necessarily mean that Dr.
15 Bittar's assessment is no longer valid, on the other hand, Dr. Bittar
16 indicated that the plaintiff's foot drop was on the right.  The
17 plaintiff, however, testified that his foot drop was to the left,
18 although he also testified to problems with his right leg. [AR 56, 58;
19 compare AR 288.]

20     The plaintiff also relies upon the report of a treating physician
21 who saw the plaintiff on January 6, 2004, nearly five months after the
22 date of the hearing and three months after the date of the ALJ's
23 decision.  Therefore, this opinion, likewise, does not pertain to the
24 period at issue.  20 C.F.R. § 416.912(d), 20 C.F.R. § 416.1470(b).
25 Even assuming that the physician's entry indicating that "Pt. Unable
26 to walk without cane for long distance" is a medical finding rather
27 than a recitation of the plaintiff's complaints, the physician also
28 \\\

indicated that the foot drop was to the left, although the plaintiff's history related gunshot wounds to the right and findings of multiple scars were also to the right. [AR 13.]

In short, none of the conflicting evidence cited by the plaintiff concerning the need for a cane falls within the period at issue.  For the period at issue, which essentially is from the date of application through the date of the decision [20 C.F.R. §§ 416.912(d), 416.1470(b)], the only medical records concerning the plaintiff's physical complaints are dated June 25, 2003, and July 15, 2003.  In June, the plaintiff sought emergency room treatment for right hip pains, and he complained of difficulty with ambulation.[2] [AR 29.]

In July, 2003, the plaintiff recited a history of being shot in the left arm and left leg, "leaving femur shattered," which required the placement of a metal rod in the thigh.  This "affected nerves, leaving Pt. w/left foot drop."[3] [AR 341; compare AR 288.]  In any case, right or left, there is no indication of a need for a cane at that time, and the plaintiff's residual pain was said to be "mild." [AR 341.]

Because of this dearth of updated information, the Commissioner attempted to secure a more recent consultative examination.  However, the plaintiff refused to attend, indicating that the State agency should deny him and "he would just file again." [AR 260-61; see AR 339; see also AR 219.]

\\\

---

[2]This evidence was not before the ALJ.  It was submitted to the Appeals Council. [AR 26-30.]

[3]The physician noted a scar on the left thigh secondary to surgery. [AR 341.]

1    It is the plaintiff who has the burden of proving disability.

2  Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001).  The plaintiff,

3  by failing to submit probative evidence relevant to the period at

4  issue and by failing to attend the consultative examination [20 C.F.R.

5  § 416.918], has not met his burden.  "Without objective medical

6  evidence that  [the plaintiff] needed a cane . . ., and in light of

7  the ALJ's findings with respect to [the plaintiff's] lack of

8  credibility, there was no reason to include [the plaintiff's]

9  subjective use of [a cane] in the hypothetical to the VE."  Thomas,

10  278 F.3d at 959-60.

11    There was, therefore, no error on the part of the ALJ in failing

12  to include the use of a cane in his hypothetical question to the

13  vocational expert.

14  **The plaintiff's obesity**

15    The plaintiff argues that his Body Mass Index is 40.6, using the

16  height (5'10") and weight (283 lbs.) found by Dr. Bittar in July,

17  2000. [Joint Stipulation at 18; AR 181.] The plaintiff contends,

18  therefore, that he suffers from the medically determinable impairment

19  of obesity which should have been considered by the ALJ at all steps

20  of the sequential evaluation.

21    The evidence concerning the plaintiff's height and weight is

22  somewhat conflicting.  The plaintiff himself has indicated in his

23  various Disability Reports that he is 6'0" tall. [AR 130, 245.] The

24  treatment record of July, 2003, likewise indicated that he is 6'0"

25  tall [AR 341] as does the post-decision treatment entry of January,

26  2004 [AR 13].  Although Dr. Bittar reported that the plaintiff weighed

27  283 pounds, when the plaintiff filed his application in September,

28  2002, he indicated that he weighed 260 pounds. [AR 245.]  In July,

2003, the plaintiff's weight is listed at 270 pounds [AR 341], and in January, 2004, the plaintiff's weight is listed at 276 to 278 pounds [AR 13, 14.] The various physicians' opinions concerning the plaintiff's degree of "obesity" is likewise varying.  Dr. Bittar, who recorded the highest weight, indicated no diagnosis of obesity but described the plaintiff as being "mildly obese." [AR 181, 184.] The physician who treated the plaintiff in July, 2003, likewise failed to indicate any diagnosis of obesity [AR 341], whereas the physician who saw the plaintiff in January and February, 2004, described the plaintiff as being morbidly obese. [AR 14.] However, the plaintiff was to follow a diet and exercise regimen to lower his cholesterol. [Id.]

In any case, the plaintiff apparently was at least somewhat overweight.  This does not mean, however, that he suffers from the medically determinable impairment of "obesity."  SSR 02-01p, cited by the plaintiff, specifically provides that although the BMI is often an indicator of "obesity," it is possible for an individual with a BMI of under 30 to suffer from obesity just as it is possible that "someone with a BMI above 30 may not have obesity if a large percentage of the weight is from muscle."  The ALJ specifically noted that the plaintiff "was very well muscled." [AR 43.]

The existence of a medically determinable impairment, moreover, must be shown by signs, symptoms, and laboratory findings. 20 C.F.R. § 416.908.  Although there are clinical signs of obesity as evidenced by the plaintiff's weight, the plaintiff cited no evidence "which states that claimant's obesity limits [his] functioning. Neither treatment notes nor any diagnoses addressed claimant's limitations due to obesity. The medical record is silent as to whether and how claimant's obesity might have exacerbated [his] condition. Moreover, claimant did

1 | not present any testimony or other evidence at [his] hearing that
2 | [his] obesity impaired [his] ability to work." <u>Burch v. Barnhart</u>, 400
3 | F.3d 676, 683 (9th Cir. 2005). In short, while the plaintiff argues
4 | that "the burden of considering obesity in assessing the residual
5 | functional capacity lies with the ALJ" [Joint Stipulation at 14], the
6 | plaintiff failed to provide the ALJ with any evidence from which to
7 | determine that the plaintiff had any impairment, or that if he did,
8 | that the impairment was severe or that it had any limiting affects
9 | whatsoever on his ability to function.  Contrary to the plaintiff's
10 | suggestion, the burden still remains with the plaintiff to establish
11 | disability.[4]

12 | \\\
13 | \\\
14 | \\\
15 | \\\
16 | \\\
17 | \\\
18 | \\\
19 | \\\
20 | \\\
21 | \\\

22 |

---

23 | [4]Even assuming that the ALJ, in fact, erred in failing to discuss
the plaintiff's obesity, this court agrees with the Commissioner that
24 | error, if any, was harmless. [Joint Stipulation at 22.]  The
plaintiff, on the other hand, counters that the Commissioner's failure
25 | to comply with her own regulations is reversible error, citing
<u>Gutierrez v. Barnhart</u>, 274 F.3d 1255, 1259 (9th Cir. 2001).  However,
26 | Social Security Rulings are not regulations, and they do not have the
force of law.  <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1203 (9th Cir.
27 | 2001).  The ALJ's failure to discuss the plaintiff's weight when the
evidence relevant to the time period at issue fails to indicate any
28 | mention of "obesity" or its limiting affects is, moreover, not
inconsistent with SSR 02-01p.

1

**CONCLUSION**

2      After careful consideration of the complaint, joint stipulation

3 of the parties, the transcript of the record, and in accordance with

4 the foregoing discussion, the magistrate judge finds that the decision

5 of the Commissioner is supported by substantial evidence and that the

6 Commissioner applied the proper legal standards.

7

**ORDER**

8      IT IS ORDERED that judgment be entered in favor of the

9 Commissioner and against the plaintiff.

10

11 Dated:   December 6, 2005

12                                    _____/s/_____

13                                    JAMES W. McMAHON
                                     United States Magistrate Judge

14

15 _____

16 _____

17

18

19

20

21

22

23

24

25

26

27

28